HUCKABY *v.* WALKER.

Opinion delivered January 12, 1920.

1. LANDLORD AND TENANT—RIGHT TO WAY-GOING CROP.—Where a lease for one year contained no provision that the tenants could gather the cotton crop after expiration of the tenancy, and there was no proof of a local custom to that effect, it was error to instruct that tenants had a reasonable time after termination of their lease to enter the land and remove the crop.

2. LANDLORD AND TENANT—RIGHT TO WAY-GOING CROPS.—At common law, in the absence of any custom to the contrary, where a lease for a term certain is silent as to who shall be entitled to growing crops at the end of the term, the tenant is not entitled to such crops.

Appeal from Clay Circuit Court, Eastern District; *R. H. Dudley*, Judge; reversed.

### STATEMENT OF FACTS.

A. B. and J. C. Walker brought separate suits against A. H. Huckaby before a justice of the peace to recover the value of certain lint cotton. A verdict was rendered in favor of the plaintiff in each case in the justice court, and the defendant appealed to the circuit court. There the cases were consolidated for the purpose of trial.

M. C. Doom owned a farm in the Eastern District of Clay County, Arkansas, and rented it under a written contract to A. B. Walker for the year 1917. The Walkers entered into possession of the farm and planted a part of it in cotton. In August, 1917, Doom sold the farm to the defendant, A. H. Huckaby.

According to the testimony of J. C. Walker, he cultivated twenty-five acres of cotton on the Doom farm in 1917. He picked over his cotton one time in the fall; then the weather became bad, and it kept snowing all the time. The snow did not go off of the ground in time for him to pick any cotton before the first of the year 1918. Huckaby purchased the land in August, 1917, and then made a contract to rent the place for the year 1918. Walker stayed on the place until some time in February, 1918, and then made an agreement with Huckaby to give up the place and move to another one which he had purchased. It was part of their agreement that Huckaby would give him further time within which to gather and haul away the cotton which remained in the field. J. C. Walker picked some of the cotton, and some time in March Huckaby and his children entered the field and picked the cotton for the value of which this suit was brought.

According to the testimony of A. B. Walker, he also rented a part of the Doom place for the year 1917, and planted a part of it in cotton. He picked the cotton over one time before the bad weather set in. It then began to snow and snowed at intervals until the last week in February, 1918. From the time it began to snow until the

first of March, 1918, there was snow on the ground continuously and the cotton could not be picked. In March, 1918, Huckaby and his children picked the cotton which remained in the field and refused to account to A. B. Walker for it.

According to the testimony of A. H. Huckaby, there was no understanding about the cotton in the field at the time the Walkers moved and gave up the land. Huckaby did not make any agreement with the Walkers that they might pick cotton after their tenancy had expired and they had left the place.

The jury returned a verdict for the plaintiffs and the defendant has appealed.

*Huddleston, Fuhr & Futrell*, for appellant.

The court erred in giving instruction No. 1 for plaintiffs, telling the jury that plaintiffs had a reasonable time after the termination of their lease to enter the land and remove the cotton. It is abstract; it is not the law and gives rights plaintiffs were not entitled to. Tiedeman on Real Prop., § 170, p. 225; 2 Blackstone, Com. 150.; Tiedeman, Real Prop., § 69; 67 Iowa 829; Tiffany, Landl. & Ten., 156; 2 *Id.*, p. 1470; 17 Atl. 39; 50 Mo. 348; 71 *Id.* 597. Being tenants at sufferance and having vacated and abandoned the premises, plaintiffs had no right to return and gather the crop. *Supra.*

*T. W. Davis* and *S. C. Costen*, for appellee.

Plaintiffs were not tenants at sufferance after January 1, 1918. 24 Cyc. 1041. They were entitled to emblements. 24 Cyc. 1040; 71 Ark. 302-304. After the termination of the lease the tenant has a reasonable time to remove his crops. 35 L. R. A. (N. S.) 707 and note; 98 Miss. 636; 54 So. Rep. 77. There was no error in instruction No. 1 nor in refusing defendant's instructions. Cases *supra.*

HART, J., (after stating the facts.) It will be remembered that the plaintiffs rented the land from Doom for the year 1917, and that in August of that year Doom

sold the land to the defendant, Huckaby. The cotton, the value of which is sued for in this case, was raised in 1917. The tenancy of the Walkers expired on the first day of January, 1918, and their lease did not contain any provision with reference to their right to go on the land and gather their crop after the expiration of their tenancy. The court instructed the jury that, in the absence of a provision to the contrary, the law provides that the plaintiffs might have reasonable time after the expiration of their tenancy within which to go upon the land and finish gathering and removing their crop.

The plaintiffs seek to uphold the judgment upon the authority of *Opperman* v. *Littlejohn* (Miss.), 35 L. R. A. (N. S.) 707. In that case the court held that a tenant of land for a year may, after the termination of the year, take away within a reasonable time a crop which stood matured on the land at the expiration of the lease. The court, also, held that in this respect there was no difference between a crop which had been severed and not removed and a crop matured and ready for severance. We can not agree with this decision. At common law where land is leased for a term certain and the lease is silent as to who shall be entitled to the growing crops at the end of the term, the tenant is not entitled to such crops. It has been generally held, however, that the rule of the common law that a tenant for years, or from year to year, can not claim crops growing on the land at the end of the term is subject to an exception where there is a custom to the contrary. A custom of this kind has been generally held to be good and reasonable, particularly in the case of a tenancy from year to year of agricultural land. It has been said that this custom is based upon justice and equity and tends to the promotion and protection of agriculture which has always been generally favored by the courts. Underhill on Landlord and Tenant, volume 2, par. 769-770; Tiffany on Landlord and Tenant, volume 2, par. 251, p. 1637; Taylor on Landlord and Tenant (9 Ed.), volume 2, paragraphs 538-540, and 24 Cyc. 1069. Where the lease contract is silent in the

respect mentioned, the custom may be reasonably under-
stood as forming part of the contract and does not alter
or contradict it. The custom, to be admissible, must be
proved to have been known to the parties or to be so gen-
eral and well established in the particular locality that
knowledge and adoption of it may be presumed. There
was no proof in the present case that it was the custom
of the locality in question that the off-going tenant should
have the way-going crops.

Therefore, the court erred in telling the jury that
the plaintiffs had a reasonable time after the termination
of their lease to enter the land and gather and remove the
cotton.

For this error the judgment must be reversed and
the cause will be remanded for a new trial.